IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
October 2, 2007 Session

**STATE OF TENNESSEE v. SHERMAN BODDIE**

**Direct Appeal from the Circuit Court for Tipton County**
**No. 5427     Joseph H. Walker, III, Judge**

---

**No. W2007-00685-CCA-R3-CD  - Filed December 11, 2007**

---

The defendant, Sherman Boddie, was convicted in the Tipton County Circuit Court of driving under the influence (DUI) and DUI per se.  The trial court merged the convictions and sentenced the defendant to eleven months and twenty-nine days, to be served on unsupervised probation after forty-eight hours incarceration.  On appeal, the defendant argues that the trial court erred in denying his motion to suppress evidence of his intoxication, because the sobriety roadblock where he was stopped violated the Tennessee Constitution.  We hold that the roadblock was constitutional and affirm the trial court's denial of the motion to suppress.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

J. Thomas Caldwell, Ripley, Tennessee, for the appellant, Sherman Boddie.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

Sergeant Kevin Williams of the Tennessee Highway Patrol (THP), the sole witness at the suppression hearing, testified that he was the supervisor at a THP sobriety checkpoint on Highway 14 in Tipton County on April 14, 2006.  Before operating the checkpoint Sergeant Williams discussed THP General Order 410-1, which establishes policies and procedures for roadblocks, with the other officers who would be assisting him.  He testified that the location and time for the roadblock were selected in advance by his immediate supervisor.  Sergeant Williams testified that

"to the best of his knowledge" the media were informed in advance of the sobriety checkpoint. He remembered that safety cones, marked units with activated emergency lights, traffic vests, warning signs, and flashlight batons were used at the roadblock. The area was illuminated and there was a place for drivers who did not wish to pass through the checkpoint to turn around. Each vehicle that approached the checkpoint was stopped.

The trial court held that the roadblock was conducted in a reasonable manner, finding that adequate safety precautions were taken, fair notice of the stop was given, all cars in both directions were stopped, and the discretion of the officers at the scene was properly limited. The court did not affirmatively find that the roadblock was publicized in advance but held that the absence of this factor did not invalidate the stop. Accordingly, the court denied the defendant's motion to suppress.

A bench trial was then conducted, at which Trooper Marvin Norfolk testified that he stopped the defendant at the sobriety checkpoint at around 10:20 p.m. on April 14, 2006. He noticed that the defendant was unsteady on his feet, his speech was slurred, his eyes were "red watery," and he had "a very strong odor of an alcoholic beverage" on his breath. The defendant admitted that he had been drinking "something." Trooper Norfolk administered several field sobriety tasks to the defendant, who "performed poorly." In Trooper Norfolk's opinion, the defendant was intoxicated.

The fifty-eight-year-old defendant testified that he lived in Bartlett, Tennessee, and had been employed as a truck driver for thirteen years. Asked on cross-examination if he told the officer the night of his arrest that he had consumed "three ten-ounce Coors . . . over a period of some hours before [the] stop," the defendant replied, "I think so." The defendant acknowledged that he had been drinking that day while working in his garden in the country and said he was on his way home to Bartlett when he was stopped. He said that he consumed his last beer around 7:00 p.m. and could not explain why his blood-alcohol content was .13%. After considering the proof and the arguments of counsel, the trial court found the defendant guilty of DUI and DUI per se and merged the two convictions.

## ANALYSIS

The defendant argues that the trial court erred in denying his motion to suppress because his seizure at the roadblock violated Article I, sections 7-8 of the Tennessee Constitution. We review the trial court's denial of the defendant's motion to suppress by the following well-established standard:

> Questions of credibility of the witnesses, the weight and value of the evidence, and resolution of conflicts in the evidence are matters entrusted to the trial judge as the trier of fact. The party prevailing in the trial court is entitled to the strongest legitimate view of the evidence adduced at the suppression hearing as well as all reasonable and legitimate inferences that may be drawn from that evidence. So long as the greater weight of the evidence supports the trial court's findings, those

findings shall be upheld. In other words, a trial court's findings of fact in a suppression hearing will be upheld unless the evidence preponderates otherwise.

State v. Odom, 928 S.W.2d 18, 23 (Tenn. 1996). However, the trial court's application of law to the facts is reviewed *de novo*, with no presumption of correctness. State v. Daniel, 12 S.W.3d 420, 423 (Tenn. 2000). This court may consider the proof at trial, as well as at the suppression hearing, when considering the appropriateness of the trial court's ruling on a pretrial motion to suppress. See State v. Henning, 975 S.W.2d 290, 299 (Tenn. 1998) (holding that because the rules of appellate procedure "contemplate that allegations of error should be evaluated in light of the entire record[,]" an appellate court "may consider the proof adduced both at the suppression hearing and at trial").

Both the Fourth Amendment to the United States Constitution and Article I, section 7 of the Tennessee Constitution protect individuals against unreasonable searches and seizures. See U.S. Const. Amend. IV; Tenn. Const. art. I, § 7. "These constitutional provisions are designed to 'safeguard the privacy and security of individuals against arbitrary invasions of government officials.'" State v. Keith, 978 S.W.2d 861, 865 (Tenn. 1998) (quoting Camara v. Municipal Court, 387 U.S. 523, 528, 87 S. Ct. 1727, 1730 (1967)). A search or seizure conducted without a warrant is presumed unreasonable, and evidence obtained as a result will be suppressed "unless the prosecution demonstrates by a preponderance of the evidence that the search or seizure was conducted pursuant to an exception to the warrant requirement." Id. at 865 (citations omitted). The stop of an automobile, even for the short duration involved in a driver's checkpoint, constitutes a seizure of persons under both the United States and Tennessee Constitutions. See Whren v. United States, 517 U.S. 806, 809-10, 116 S. Ct. 1769, 1772 (1996); State v. Downey, 945 S.W.2d 102, 107 (Tenn. 1997). Thus, to be considered reasonable, the warrantless stop of an automobile must fall under one of the exceptions to the warrant requirement. These exceptions include roadblocks that are conducted "pursuant to a plan embodying explicit, neutral limitations on the conduct of individual officers." Brown v. Texas, 443 U.S. 47, 51, 99 S. Ct. 2637, 2640 (1979). The United States Supreme Court, balancing the public interest in preventing drunk driving against the Fourth Amendment interest of the individual, has held that a roadblock designed to check for intoxicated drivers is not violative of the Fourth Amendment to the United States Constitution. Michigan v. Sitz, 496 U.S. 444, 453, 110 S. Ct. 2481, 2485 (1990).

In Downey, 945 S.W.2d at 110, our supreme court adopted the balancing analysis used in Sitz to determine whether sobriety checkpoints violate Article I, section 7 of the Tennessee Constitution. Under this analysis, which weighs "'the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty,'" id. at 107 (quoting Brown, 443 U.S. at 50-51, 99 S. Ct. at 2640), the court concluded that a sobriety checkpoint, because of the compelling public interest in preventing drunk driving, can be a reasonable seizure under the Tennessee Constitution "provided it is established and operated in accordance with predetermined operational guidelines and supervisory authority that minimize the risk of arbitrary intrusion on individuals and limit the discretion of law enforcement officers at the scene." Id. at 104.

In State v. Hicks, 55 S.W.3d 515, 533 (Tenn. 2001), our supreme court discussed Downey's holding, explaining that the most important aspect of a reasonable roadblock is "the presence of genuine limitations upon the discretion of the officers in the field." To establish this factor, the State must show both that the initial decision to establish the roadblock was not made by field officers and that the officers adhered to neutral procedures previously fixed by administrative decision or regulation. The absence of either limitation on field officers' discretion renders a roadblock unconstitutional *per se*. Id. The court also listed four characteristics of a roadblock that minimize the risk of arbitrary intrusion with liberty, including: (1) stopping all cars traveling in both directions unless traffic is heavily congested; (2) taking adequate safety precautions; (3) employing uniformed officers, marked patrol cars, and flashing emergency lights; and (4) providing advance publicity of the roadblock. Each of these four factors weighs heavily in determining the overall reasonableness of a stop, but the absence of one of them will not necessarily invalidate a roadblock. Id.

Applying these principles to the facts of this case, we uphold the finding of the trial court that the State followed proper procedures in conducting the roadblock. Beginning with the most important of the Downey/Hicks factors, there was sufficient evidence for the trial court to find that the discretion of the officers in the field was properly limited. Sergeant Williams' uncontroverted testimony at the suppression hearing was that the time and location of the roadblock were selected in advance by his superior officer and that the officers followed the procedures outlined in THP General Order 410-1. With regard to three of the four remaining factors, Sergeant Williams testified that all cars were stopped in both directions, adequate safety precautions were taken, officers were in uniform, and marked patrol cars with activated emergency lights were present.

As we understand it, the defendant's argument is that the roadblock was unconstitutional *per se* because the State failed to prove that it was publicized in advance. This is an incorrect interpretation of our law. Hicks unequivocally holds that the absence of advance publicity will not necessarily invalidate a roadblock; a court must evaluate the overall reasonableness of the checkpoint by considering all of the factors. 55 S.W.3d at 533; see also State v. Freddie Ray Guye, No. 01C01-9803-CC-00141, 1999 WL 54805, at *2 (Tenn. Crim. App. Feb. 8, 1999), perm. to appeal denied (Tenn. July 19, 1999). A roadblock is unconstitutional *per se* only when the field officers' discretion is not properly limited.

The record supports the trial court's holding that the checkpoint was operated in a constitutionally reasonable manner. Because the State proved the existence of both mandatory Downey/Hicks factors and three of the four remaining factors beyond a reasonable doubt, the lack of proof of advance publicity does not invalidate the roadblock.

## CONCLUSION

Based upon the foregoing authorities and reasoning, the judgment of the trial court is affirmed.

_____
ALAN E. GLENN, JUDGE